# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## COLUMBIA DIVISION


| | | |
|---|---|---|
| **MARK EDWARD COCHRAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No. 1:17-cv-00091** |
| **v.** | ) | **Judge Crenshaw / Frensley** |
| | ) | |
| **NANCY BERRYHILL,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |


## REPORT AND RECOMMENDATION

Pending before the Court is Plaintiff's Motion for Judgment on the Administrative

Record seeking a period of disability and Disability Insurance Benefits ("DIB") under Title II of

the Social Security Act. Docket No. 20. Plaintiff has filed an accompanying Brief, in which

Plaintiff asserts instead that "[t]his matter concerns a claim for supplemental security income

[("SSI")] under Title XVI of the Social Security Act." Docket No. 19. Plaintiff originally filed

his applications for both DIB and SSI on August 1, 2014 and August 2, 2014 respectively,

alleging disability beginning April 15, 2011. *See* Docket No. 19, Attachment ("TR"), pp. 218,

220.

Subsequently, during Plaintiff's September 22, 2016 hearing before an administrative law

judge ("ALJ"), Plaintiff amended his alleged disability onset date to be July 10, 2014. TR 35, 38,

231. As a result, Plaintiff withdrew his DIB claim during the hearing because his amended

alleged onset date occurred after his date last insured of June 30, 2013. TR 38, 233. Despite

Plaintiff's Motion seeking DIB, Plaintiff has withdrawn his DIB claim and this case actually involves only Plaintiff's claim for SSI benefits.

Accordingly, this is a civil action filed pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff SSI, as provided under Title XVI of the Social Security Act ("the Act"), as amended. As noted, this case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record (Docket No. 20) and Plaintiff has filed an accompanying Brief (Docket No. 19). Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 21.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

## I. INTRODUCTION

As discussed above, Plaintiff's only remaining application now before the Court is his application for SSI. Plaintiff protectively filed his application for SSI on July 10, 2014, alleging that he had been disabled since July 10, 2014,[1] due to left elbow and knee pain, ruptured discs in his back, hernia, arthritis, difficulty focusing due to eye problems, difficulty hearing in his left ear, heart problems, alcoholism since age nine, and breathing problems. *See, e.g.,* TR 80, 231, 237. Plaintiff's application was denied both initially (TR 117-20) and upon reconsideration (TR 127-32). Plaintiff subsequently requested (TR 138) and received (TR 35-59) a hearing. Plaintiff's

---

[1] The undersigned notes that Plaintiff's original SSI application indicated his alleged onset date was April 15, 2011. TR 220. Because Plaintiff subsequently amended his alleged onset date to July 10, 2014, the undersigned refers to the amended date instead. TR 231.

hearing was conducted on September 22, 2016, by ALJ Donald E. Garrison. TR 35. Plaintiff and

Vocational Expert, Gary Sturgill, appeared and testified. *Id.*

On February 9, 2017, the ALJ issued a decision unfavorable to Plaintiff, finding that

Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 13-

34. Specifically, the ALJ made the following findings of fact:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2013.

2. The claimant has not engaged in substantial gainful activity since April 15, 2011,[2] the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*)

3. The claimant has the following severe impairments: status/post deep venous thrombosis right leg; chronic obstructive pulmonary disease; status/post pulmonary embolism; status/post myocardial infarction with systolic heart failure; obesity; generalized anxiety disorder; depressive disorder; and alcohol use disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant is limited to occasionally climbing, balancing, stooping, kneeling, crouching, and crawling. He is limited to standing and walking a total of four hours in an eight-hour workday. He has no restrictions on sitting. He should avoid all exposure to irritating inhalants; work hazards such as

_____

[2] The undersigned notes that the ALJ cites the original alleged onset date (TR 218, 220), rather than Plaintiff's amended alleged onset date of July 10, 2014 (TR 231).

heights, moving machinery, and driving; and exposure to temperature extremes. He is limited to frequent use of the hands for handling, feeling, and fingering. He is limited to frequent use of the arms for reaching, pushing, and pulling. He can understand, remember, and carry out short and simple instructions and make judgments on simple work-related decisions. He can interact occasionally with the public. He can tolerate occasional changes in work procedures and requirements.

6.     The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.     The claimant was born on May 29, 1964 and was 46 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

8.     The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.    The claimant has not been under a disability, as defined in the Social Security Act, from April 15, 2011,[3] through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

TR 19-29 (footnotes added).

---

[3] *See supra* note 2 and accompanying text.

On April 14, 2017, Plaintiff timely filed a request for review of the hearing decision. TR

193. On August 4, 2017, the Appeals Council issued a letter declining to review the case (TR 1-

4), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil

action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the

Commissioner's findings are supported by substantial evidence, based upon the record as a

whole, then these findings are conclusive. *Id.*

## II. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and

testimonial evidence of record. Accordingly, the Court will discuss those matters only to the

extent necessary to analyze the parties' arguments.

## III. CONCLUSIONS OF LAW

### A. Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the

administrative hearing process. *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369

(6th Cir. 1991). The purpose of this review is to determine: (1) whether substantial evidence

exists in the record to support the Commissioner's decision, and (2) whether any legal errors

were committed in the process of reaching that decision. *Landsaw v. Sec'y of Health & Human

Servs.*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept

as adequate to support the conclusion." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389 (6th Cir.

1999), *citing Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been

further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell*

*v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245 (6th Cir. 1996), *citing Consol. Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229 (1938).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389, *citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined. *Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985), *citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnoses and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

## B. Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which

Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process summarized as follows:

> (1) If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
>
> (2) If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.
>
> (3) If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[4] or its equivalent. If a listing is met or equaled, benefits are owing without further inquiry.
>
> (4) If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations). By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a prima facie case of disability.
>
> (5) The burden then shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

*See, e.g.*, 20 CFR §§ 404.1520, 416.920. *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the

---

[4]The Listing of Impairments is found at 20 CFR § 404, Subpt. P, App. 1.

claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. *Moon*, 923 F.2d at 1181; 20 CFR § 404, Subpt. P, App. 2, Rule 200.00(e)(1), (2). *See also Damron v. Sec'y of Health & Human Servs.*, 778 F.2d 279, 281-82 (6th Cir. 1985). Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's prima facie case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments: mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

### C. Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ: (1) failed to properly evaluate Plaintiff's credibility; (2) failed to provide sufficient justification for his evaluation of the medical opinion evidence; and (3) failed to properly evaluate Plaintiff's residual functional capacity. Docket No. 19. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and

transcript of the record, a judgment affirming, modifying, or
reversing the decision of the Commissioner of Social Security,
with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994).

## 1. ALJ's Determination of Plaintiff's Credibility and Evaluation of Subjective Complaints

Plaintiff contends that the ALJ did not appropriately address or consider his subjective complaints when finding that his subjective complaints were not fully credible. Docket No. 19. Specifically, Plaintiff argues that "[t]he ALJ made the conclusory finding that '[Plaintiff's] statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record.'" *Id.* at 11, *citing* TR 25. Plaintiff submits that "[t]his finding is not supported by substantial record evidence." *Id.*

Plaintiff maintains that his "reports of loss of function are consistent with the results of the objective x-rays, CTs, and surgeries," and that "[i]nstead of discussing the relationship between [Plaintiff's] loss of function complaints in light of these objective medical findings, the ALJ stated, that 'objective medical evidence did not support the degree to which [he] alleged

their limiting effects.'" *Id.* at 15, *citing* TR 27. Plaintiff contends the ALJ erred in finding that "the evidence shows the claimant's activities of daily living are not limited to the extent one would expect, given [his] complaints of disabling symptoms and limitations" (*Id.*, *citing* TR 27 (internal quotation marks omitted)), and in finding that Plaintiff's "objective examinations and/or diagnostic testing did not support the severity of his alleged symptoms" (*Id.*, *citing* TR 27 (internal quotation marks omitted)). Plaintiff further argues that because the ALJ's decision "fails to contain specific reasons for the finding on credibility, is not supported by the case record, and is not sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to [the Plaintiff's] statements and the reason for the weight," the decision must be reversed. *Id.* at 16.

Defendant responds that "the ALJ properly considered and set forth factors constituting substantial evidence supporting his findings regarding the consistency of Plaintiff's subjective complaints." Docket No. 21 at 9. Defendant submits that "[t]he ALJ properly evaluated Plaintiff's alleged symptoms in a manner that was consistent with SSA's [Social Security Administration's] current regulations and policies." *Id.* Defendant notes that the ALJ, in determining Plaintiff's subjective complaints were not fully credible, considered "Plaintiff's testimony, the findings and opinions of the consulting and non-examining physicians as discussed above, [and the] objective medical findings that were not consistent with disabling limitations . . . ," as well as "evidence of improvement and adequate management of Plaintiff's medical conditions including DVT [deep venous thrombosis], heart issues, and renal failure secondary to dehydration, with proper treatment." *Id.* at 10 (internal citations omitted).

The Sixth Circuit has set forth the following criteria for assessing a plaintiff's subjective

allegations, including pain:

> [S]ubjective allegations of disabling symptoms, including pain, cannot alone support a finding of disability . . . . [T]here must be evidence of an underlying medical condition *and* (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition *or* (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

*Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 852-53 (6th Cir. 1986), *quoting* S. Rep. No. 466, 98th Cong., 2d Sess. 24 (emphasis added); *see also* 20 CFR §§ 404.1529, 416.929 ("statements about your pain or other symptoms will not alone establish that you are disabled . . . ."); *Moon v. Sullivan*, 923 F.2d 1175, 1182-83 (6th Cir. 1990) ("though Moon alleges fully disabling and debilitating symptomatology, the ALJ may distrust a claimant's allegations . . . if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict each other."). Moreover, "[a]llegations of pain . . . do not constitute a disability, unless the pain is of such a debilitating degree that it prevents an individual from participating in substantial gainful employment." *Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1227 (6th Cir. 1988).

When analyzing the claimant's subjective complaints of pain, the ALJ must also consider the following factors and how they relate to the medical and other evidence in the record: the claimant's daily activities; the location, duration, frequency, and intensity of claimant's pain; the precipitating and aggravating factors; the type, dosage, and effect of medication; and the other treatment or measures to relieve pain. *See Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994)*, construing* 20 CFR § 404.1529(c)(2). After evaluating these factors in conjunction with the evidence in the record, and by making personal observations of the claimant at the hearing, an

ALJ may determine that a claimant's subjective complaints of pain and other disabling symptoms are not credible. *See, e.g.*, *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997); *Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 230 (6th Cir. 1990); and *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981).

Regarding Plaintiff's subjective complaints, the ALJ stated as follows:

> The claimant testified he is unable to perform work activity due to limitations stemming from his severe impairments. The claimant testified he has pain all over, back pain, chest pain, shortness of breath, swelling in both feet, and gets treatment at the county health department. The claimant testified he is limited to standing for fifteen minutes at one time, sitting fifteen minutes at one time, and lifting fifteen to twenty pounds. The claimant testified he does not clean, do laundry, dishes, grocery shopping, or outside work. He spends the day watching television. He testified it takes him ten minutes to put on socks. He lives with his girlfriend and he testified that she is on disability. He does not drive. The claimant testified he lost his license because of a DUI.

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the above alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. Accordingly, these statements have been found to affect the claimant's ability to work only to the extent they can reasonably be accepted as consistent with the objective medical and other evidence.

> State agency medical consultants reviewed the record at the initial and reconsideration levels of adjudication (Ex 2A and 8A). At the initial level, the consultant concluded the claimant is capable of work at the light exertional level with occasional postural limitations. In developing his opinion, the consultant noted the claimant's allegations, medical evidence, and the opinion of a consultative examiner (Ex 2A).

> The consultative examiner, Dr. William Robinson, M.D., noted the

claimant alleged pain in his left elbow and knees. The claimant reported an MRI that revealed ruptured discs at L3 and L4. Upon examination, the claimant was noted as obese with a body mass index of 32 percent. The claimant's chest was clear, his heart had regular rate and rhythm, his abdomen was soft and nontender, and the claimant had no sensory, motor, or reflex deficits. In addition, Dr. Robinson noted normal ranges of motion in all joints and negative straight leg raise testing. The claimant's pinch and grip strength were normal as were fine and gross coordination. Lastly, Dr. Robinson noted the claimant smelled of alcohol and had slurred speech (Ex 2F).

Dr. Robinson summarized his examination noting, "This is a 50-year-old man who has pain in his left elbow and knee but full range of motion there and actually had a normal exam of his left elbow, a normal exam of his knees. He has a history of Barrett's esophagitis and probably hiatus hernia, from which he is somewhat symptomatic. He has a history of diffuse arthritis in all joints but a negative joint exam. He has a history of heart problems but sinus rhythm and no murmur appreciated today. He has a history of alcoholism, continues to drink, and is apparently drinking today. He has a history of CORD[5] [*sic*] but really a pretty unremarkable abdominal exam including no clubbing, cyanosis, or edema."

Based upon his examination findings, Dr. Robinson concluded the claimant's symptoms are fairly dramatically different to his physical findings. Dr. Robinson estimated that he could lift 30 pounds two hours a day and 15 pounds five hours a day. He could carry 25 pounds two hours a day and 15 pounds five hours a day. He could sit probably six hours a day, stand and walk five hours a day. He would have some trouble pushing, pulling, kneeling, stooping, squatting, crouching, and crawling. Restrictions would be due primarily to his back with arthritic pain and his obesity. Lastly, Dr. Robinson noted he did not see a need for an assistive device (Ex 2F).

The State agency medical consultant at the initial level, Dr. Frank Pennington, M.D., found Dr. Robinson's opinion is too restrictive

---

[5] Dr. Robinson's examination notes indicate that "[Plaintiff] has a history of *COPD* . . . ." TR 326 (emphasis added). The ALJ's misstatement of Plaintiff's condition appears to be a typographical error and is inapposite to the disposition of the issues before this Court.

based upon the medical evidence of record including range of motion and motor strength testing. As such, he credited Dr. Robinson's opinion with minimal weight. At the reconsideration level, Robert Weisberg reviewed the evidence on June 1, 2015 (Ex 8A). *However, the undersigned notes there are no medical credentials associated with Mr. Weisberg. Therefore, the undersigned cannot attribute weight to his review or opinion.*

*The undersigned finds the review performed by Dr. Pennington accurately reflects the evidence at the initial level and gives his opinion significant weight. However, the undersigned credits greater weight to Dr. Robinson's examining opinion than to Dr. Pennington's opinion.*

*Evidence received at the reconsideration and hearing levels support greater limitations* (Ex 3F, 4F and 7F-14F). The evidence shows the claimant underwent emergency medical treatment in November 2014 due to deep venous thrombosis (DVT) and pulmonary edema. Since that time, the claimant has been on coagulant therapy consisting of Lasix or Warfarin. In December 2014, the claimant returned to the emergency room complaining of right knee pain after falling while carrying a television upstairs (Ex 3F, 4F, and 7F).

In March 2015, the claimant presented to the emergency room complaining of shortness of breath and chest pain. He alleged they [*sic*] symptoms have been ongoing since the inpatient care he received in November 2014. *However, the undersigned notes the claimant's allegation is not consistent with an individual carrying a television upstairs, as reported in December 2014.* Continuing, the emergency providers performed diagnostic testing which revealed acute renal failure likely secondary to dehydration from overly diuresed from Lasix. The evidence shows the claimant's symptoms were improved with IV hydration (Id.). The claimant presented to the Lawrence County Health Department for follow up in April 2014 with complaints of pain "all the time" and he reported his recent emergency room treatment. The health department provider discontinued the claimant's Coreg and Lisinopril due to the claimant's hypotension documented in the emergency room. The provider noted further that the claimant's blood pressure was normal without medications (Ex 7F and 10F-13F).

. . .

As for the opinion evidence, the undersigned notes there were no opinions submitted for consideration from the claimant's treating providers for consideration [*sic*]. In addition, there were no third party opinions.

The State agency psychological consultants reviewed the evidence, as discussed in the above Findings. Based upon their review, the consultants determined the claimant can understand and remember simple and lower level detailed instructions; can attend and persist on above tasks with routine breaks; can relate appropriately with supervisors and peers, but public interaction can be tolerated infrequently (or occasionally); and the claimant can adapt to infrequent workplace changes and set limited goals (Ex 2A and 8A).

*In evaluating the opinion evidence, the undersigned credits significant weight to medical and psychological examining sources in developing the residual functional capacity assessments. The undersigned credits greater weight to these opinions than to non-examining State agency consultant's opinions. However, as discussed above, the undersigned finds the evidence supports greater limitations since these opinions were developed. As such, the claimant has reduced the claimant's [sic] capacity for standing and walking, and has included manipulative and environmental limitations.*

TR 24-27 (emphasis added).

The ALJ in the case at bar ultimately found that Plaintiff's subjective complaints were not fully credible. TR 27. Specifically, the ALJ stated that:

In sum, after reviewing the clinical and objective findings in conjunction with the factors contained in SSR 16-3p, *the undersigned finds the claimant's medically determinable impairments could produce his alleged symptoms; however, the objective medical evidence did not support the degree to which he alleged their limiting effects.*

Further supporting the undersigned's residual functional capacity assessment, the evidence shows the claimant's activities of daily living are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. *In addition, the*

*claimant's objective examinations and/or diagnostic testing did not support the severity of his alleged symptoms.* State agency consultants reviewed the evidence and concluded the claimant is not disabled. The claimant's treating providers did not provide opinion evidence supporting greater limitations than those provided in the residual functional capacity assessment. *Lastly, for reasons discussed, the claimant's testimony was not reasonably consistent with the objective evidence of record.*

After a thorough review of the evidence, including the claimant's allegations, forms completed at the request of Social Security Administration, the objective medical findings, medical opinions, and other relevant evidence, the undersigned finds the claimant is capable of performing work activity consistent with the limitations contained within the residual functional capacity assessment. *For reasons discussed, the undersigned finds the claimant's conditions result in work-related limitations; however, the evidence does not support limitations to the extent that the claimant has alleged.*

*Id.*

As can be seen above, the ALJ's decision specifically addresses not only the medical evidence, but also Plaintiff's subjective claims, indicating that these factors were considered. TR 24-26, 26-27. The ALJ's articulated rationale demonstrates that, although there is evidence which could support Plaintiff's claims, the ALJ chose to rely on evidence that was inconsistent with Plaintiff's allegations. This is within the ALJ's province.

The ALJ, when evaluating the entirety of the evidence, is entitled to weigh the objective medical evidence against Plaintiff's subjective claims of pain and reach a credibility determination. *See, e.g., Walters,* 127 F.3d at 531; *Kirk,* 667 F.2d at 538 (6th Cir. 1981). An ALJ's findings regarding a claimant's credibility are to be accorded great weight and deference, particularly because the ALJ is charged with the duty of observing the claimant's demeanor and credibility. *Walters,* 127 F.3d at 531, *citing Villarreal v. Sec'y of Health & Human Servs.,* 818

F.2d 461, 463 (6th Cir. 1987). Discounting credibility is appropriate when the ALJ finds

contradictions among the medical reports, the claimant's testimony, the claimant's daily

activities, and other evidence. *See Walters*, 127 F.3d at 531, *citing Bradley,* 862 F.2d at 1227; *cf*

*King v. Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984); and *Siterlet v. Sec'y of Health & Human*

*Servs.*, 823 F.2d 918, 921 (6th Cir. 1987). If the ALJ rejects a claimant's testimony as not

credible, however, the ALJ must clearly state the reasons for discounting a claimant's testimony

(*see Felisky*, 35 F.3d at 1036), and the reasons must be supported by the record. S*ee King*, 742

F.2d at 975.

As discussed above, after assessing the medical and testimonial evidence, the ALJ

ultimately determined that Plaintiff's subjective complaints were not fully credible. TR 27. In

making this determination, the ALJ observed Plaintiff during his hearing, assessed the medical

records, and reached a reasoned decision. The ALJ's findings are supported by substantial

evidence and the decision not to accord full credibility to Plaintiff's allegations was proper.

Therefore, this claim fails.

**2. ALJ's Analysis of the Medical Opinion Evidence**

Plaintiff contends that "the ALJ's decision must be reversed because it failed to properly

evaluate the medical evidence, and his resulting decision therefore was 'not supported by

substantial evidence' and was not 'made pursuant to proper legal standards.'" Docket No. 19 at

11 (internal citation omitted). Plaintiff argues that "[i]t appears the ALJ gives the same

'significant' weight to Dr. Robinson and Dr. Pennington's opinions," even though the ALJ

indicated that Dr. Robinson's opinion was accorded greater weight than Dr. Pennington's. *Id.* at

10-11. Plaintiff maintains that "the ALJ did not state any specific reasons why he gave credibility

to one medical expert over the other." *Id.* at 11. Additionally, Plaintiff appears to argue that the ALJ erred in according "no weight to Dr. Weisberg, who is the only physician that reviewed [Plaintiff's] records after submission of the additional evidence." *Id.* (internal citation omitted).

Defendant responds that "the ALJ properly evaluated and weighed the medical opinion evidence as part of his consideration of the entire record to determine Plaintiff's supportable level of limitation as reflected in his RFC [residual functional capacity] finding." Docket No. 21 at 5. Defendant maintains that the ALJ properly addressed and weighed the opinions of consultative examining physician Dr. Robinson and non-examining State agency physician Dr. Pennington. *Id.* at 5-6. Defendant submits that the opinion of non-examining State agency physician Dr. Robert Weisberg was properly "given no weight or consideration" because "there were no medical credentials associated with him." *Id.* at 6. Defendant argues that "the ALJ also properly considered evidence subsequent to these doctors' opinions, including emergency room treatment for deep venous thrombosis, pulmonary edema, and renal failure due to dehydration, and found that the evidenced [*sic*] supported greater limitations than those set forth by the consulting and non-examining physicians." *Id.* at 6.

Defendant further argues "the ALJ properly considered the findings and opinions of the non-examining state agency psychological consultants who reviewed the evidence . . . ." *Id.* at 6. Defendant contends that "[a]s these opinions were consistent with the evidence, the ALJ properly gave them significant weight in determining Plaintiff's mental RFC, and gave greater weight to the examining physician [Dr. Robinson]." *Id.* at 7. Defendant submits that "the ALJ properly based his RFC determination on the entire record, including the medical opinion evidence from consulting and state agency physicians." *Id.* at 8.

18

There is no requirement that the ALJ must specifically and comprehensively articulate exactly which pieces of testimony he accepts and/or rejects, and the Regulations do not so require. Rather, the Regulations simply require that the ALJ state "the findings of fact and the reasons for the decision." 20 CFR § 416.1453(a). As the Sixth Circuit has noted, "[t]o require a more elaborate articulation of the ALJ's thought processes would not be reasonable." *Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987).

Following the discussion of the medical evidence, as has been quoted in the statement of error above, the ALJ explained the weight he accorded each medical opinion as follows:

> The State agency medical consultant at the initial level, Dr. Frank Pennington, M.D., found Dr. Robinson's opinion is too restrictive based upon the medical evidence of record including range of motion and motor strength testing. As such, he credited Dr. Robinson's opinion with minimal weight. At the reconsideration level, Robert Weisberg reviewed the evidence on June 1, 2015 (Ex 8A). *However, the undersigned notes there are no medical credentials associated with Mr. Weisberg. Therefore, the undersigned cannot attribute weight to his review or opinion.*
>
> *The undersigned finds the review performed by Dr. Pennington accurately reflects the evidence at the initial level and gives his opinion significant weight. However, the undersigned credits greater weight to Dr. Robinson's examining opinion than to Dr. Pennington's opinion.*
>                                            . . .
>
> As for the opinion evidence, the undersigned notes there were no opinions submitted for consideration from the claimant's treating providers for consideration [*sic*]. In addition, there were no third party opinions.
>                                            . . .
>
> *In evaluating the opinion evidence, the undersigned credits significant weight to medical and psychological examining sources in developing the residual functional capacity assessments. The undersigned credits greater weight to these opinions than to non-*

> *examining State agency consultant's opinions. However, as discussed above, the undersigned finds the evidence supports greater limitations since these opinions were developed. As such, the claimant [sic] has reduced the claimant's capacity for standing and walking, and has included manipulative and environmental limitations.*

TR 25-27 (emphasis added).

With regard to Plaintiff's argument that the ALJ accorded the same degree of "significant weight" to Dr. Robinson as Dr. Pennington, the ALJ's opinion expressly states that "[t]he undersigned finds the review performed by Dr. Pennington accurately reflects the evidence at the initial level and gives his opinion significant weight," and that "the undersigned credits greater weight to Dr. Robinson's examining opinion than to Dr. Pennington's opinion." TR 26. Further, the ALJ states that "[i]n evaluating the opinion evidence, the undersigned credits significant weight to the medical and psychological examining sources in developing the residual functional capacity assessments. The undersigned credits greater weight to these opinions than to the non-examining State agency consultant's opinions." TR 27.

The ALJ's rationale demonstrates that he accorded significant weight to each medical and psychological source, and that he accorded additional weight to the examining sources, including Dr. Robinson, but not to the non-examining State agency consultants, which include Dr. Pennington. This allocation between examining and non-examining sources is entirely consistent with the Act and Regulations, and is within the ALJ's province. Plaintiff's argument fails.

As to the ALJ's refusal to accord any weight to Dr. Weisberg's opinion, the ALJ stated that "[a]t the reconsideration level, Robert Weisberg reviewed the evidence on June 1, 2015 (Ex 8A). However, the undersigned notes there are no medical credentials associated with Mr.

Weisberg. Therefore, the undersigned cannot attribute weight to his review or opinion." TR 25. An ALJ may refuse to attribute weight to a medical opinion if he or she cannot determine whether the opinion is from an acceptable medical source. Because the record does not contain any evidence that would establish Dr. Weisberg's credentials as an acceptable medical source, the ALJ in the case at bar could not determine Dr. Weisberg's status as such, and thus appropriately refused to accord any weight to his opinion.

As has been demonstrated, the ALJ in the instant action discussed the medical and psychological opinion evidence of record, and articulated the rationale for his decision. TR 19-29. The ALJ thus complied with the Regulations, and this claim fails.

### 3. ALJ's Determination of Plaintiff's Residual Functional Capacity ("RFC")

Plaintiff maintains that "[t]he ALJ did not provide any rationale for [Plaintiff's] limitation of standing and walking 4 hours total in an 8-hour workday." Docket No. 19 at 17. Plaintiff argues that "[t]he ALJ did not consider the only medical opinion provided during [Plaintiff's] reconsideration phase" and "did not consider [Plaintiff's] testimony at the administrative hearing regarding his increased limitations." *Id.* Plaintiff contends that his "limitations are equal to standing or walking two hours in a workday and eliminate him from performing light work pursuant to SSR 83-10" (*Id.*), because, according to the testimony of vocational expert Dr. Sturgill, "he would be precluded from working since that would be sedentary work" (*Id.*, *citing* TR 56). Plaintiff submits that because he "was 50 years of age on May 29, 2014 or closely approaching advanced age, has a limited or less education, [and] non-transferable skilled and semi-skilled skills, he is disabled." *Id.*

Defendant responds that the ALJ "properly considered evidence of Plaintiff's activities of

daily living that he found were 'not limited to the extent one would expect, given the complaints of disabling symptoms and limitations.'" Docket No. 21 at 10-11, *citing* TR 27. Defendant argues that "the ALJ properly considered the entire record, including objective medical findings, the nature and effectiveness of Plaintiff's treatment, Plaintiff's activities of daily living, and medical opinion evidence in evaluating the consistency of Plaintiff's alleged medical impairments and determining Plaintiff's RFC." *Id.* at 11. Defendant submits that "[t]he ALJ adequately accounted for the degree of limitation supported by the overall record." *Id.*

"Residual Functional Capacity" is defined as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 CFR § 404, Subpt. P, App. 2 § 200.00(c). With regard to the evaluation of physical abilities in determining a claimant's RFC, the Regulations state:

> When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work.

20 CFR § 404.1545(b).

The ALJ in the case at bar ultimately determined that Plaintiff retained the RFC to perform light work, stating:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant is limited to occasionally climbing, balancing, stooping,

kneeling, crouching, and crawling. He is limited to standing and walking a total of four hours in an eight-hour workday. He has no restrictions on sitting. He should avoid all exposure to irritating inhalants; work hazards such as heights, moving machinery, and driving; and exposure to temperature extremes. He is limited to frequent use of the hands for handling, feeling, and fingering. He is limited to frequent use of the arms for reaching, pushing, and pulling. He can understand, remember, and carry out short and simple instructions and make judgments on simple work-related decisions. He can interact occasionally with the public. He can tolerate occasional changes in work procedures and requirements.

TR 23.

As has been quoted above, the ALJ explained:

Further supporting the undersigned's residual functional capacity assessment, the evidence shows the claimant's activities of daily living are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. In addition, the claimant's objective examinations and/or diagnostic testing did not support the severity of his alleged symptoms. State agency consultants reviewed the evidence and concluded the claimant is not disabled. The claimant's treating providers did not provide opinion evidence supporting greater limitations than those provided in the residual functional capacity assessment. Lastly, for reasons discussed, the claimant's testimony was not reasonably consistent with the objective evidence of record.

After a thorough review of the evidence, including the claimant's allegations, forms completed at the request of Social Security Administration, the objective medical findings, medical opinions, and other relevant evidence, the undersigned finds the claimant is capable of performing work activity consistent with the limitations contained within the residual functional capacity assessment. For reasons discussed, the undersigned finds the claimant's conditions result in work-related limitations; however, the evidence does not support limitations to the extent that the claimant has alleged.

TR 27.

In so finding and as discussed in the statements of error above, the ALJ considered the medical evidence of record, including the opinions of the medical and psychological examining and non-examining sources (TR 25-27), Plaintiff's medical treatment received after the initial level of review (TR 26), Plaintiff's subjective complaints (TR 25-27), and Plaintiff's reported daily activities (TR 24, 27).

Contrary to Plaintiff's assertion that the ALJ did not consider Plaintiff's testimony regarding his increased limitations, the ALJ explicitly stated:

> The claimant testified he is unable to perform work activity due to limitations stemming from his severe impairments. The claimant testified he has pain all over, back pain, chest pain, shortness of breath, swelling in both feet, and gets treatment at the county health department. The claimant testified he is limited to standing for fifteen minutes at one time, sitting fifteen minutes at one time, and lifting fifteen to twenty pounds. The claimant testified he does not clean, do laundry, dishes, grocery shopping, or outside work. He spends the day watching television. He testified it takes him ten minutes to put on socks. He lives with his girlfriend and he testified that she is on disability. He does not drive. The claimant testified he lost his license because of a DUI.

TR 24.

Additionally, contrary to Plaintiff's assertion that the ALJ did not provide any rationale for imposing the RFC limitation of standing and walking four hours total in an eight-hour workday, the ALJ stated:

> *Evidence received at the reconsideration and hearing levels support greater limitations* (Ex 3F, 4F and 7F-14F). The evidence shows the claimant underwent emergency medical treatment in November 2014 due to deep venous thrombosis (DVT) and pulmonary edema. Since that time, the claimant has been on coagulant therapy consisting of Lasix or Warfarin. In December

24

2014, the claimant returned to the emergency room complaining of right knee pain after falling while carrying a television upstairs (Ex 3F, 4F, and 7F).

In March 2015, the claimant presented to the emergency room complaining of shortness of breath and chest pain. He alleged they [*sic*] symptoms have been ongoing since the inpatient care he received in November 2014. *However, the undersigned notes the claimant's allegation is not consistent with an individual carrying a television upstairs, as reported in December 2014.* Continuing, the emergency providers performed diagnostic testing which revealed acute renal failure likely secondary to dehydration from [possibly being] overly diuresed from Lasix. The evidence shows the claimant's symptoms were improved with IV hydration (Id.). The claimant presented to the Lawrence County Health Department for follow up in April 2014 with complaints of pain "all the time" and he reported his recent emergency room treatment. The health department provider discontinued the claimant's Coreg and Lisinopril due to the claimant's hypotension documented in the emergency room. The provider noted further that the claimant's blood pressure was normal without medications (Ex 7F and 10F-13F).

. . .

In evaluating the opinion evidence, the undersigned credits significant weight to medical and psychological examining sources in developing the residual functional capacity assessments. The undersigned credits greater weight to these opinions than to non-examining State agency consultant's opinions. *However, as discussed above, the undersigned finds the evidence supports greater limitations since these opinions were developed. As such, the claimant has reduced the claimant's [*sic*] capacity for standing and walking, and has included manipulative and environmental limitations.*

TR 26-27 (emphasis added).

As can be seen in the quoted passages above, the ALJ considered Plaintiff's testimony regarding his alleged increased limitations. The ALJ also explained that medical incidents and

treatment subsequent to Plaintiff's initial evaluations warranted incorporating greater limitations into Plaintiff's RFC. Accordingly, these arguments fail.

Plaintiff also argues that the ALJ failed to consider the opinion of Dr. Weisberg in determining Plaintiff's RFC. As discussed in the statement of error above, an ALJ may refuse to attribute weight to a medical opinion if he or she cannot determine whether the opinion is from an acceptable medical source. For the reasons discussed above, the ALJ in the case at bar properly refused to accord weight to Dr. Weisberg's opinion. This argument therefore fails.

As has been demonstrated, the ALJ evaluated the medical and testimonial evidence of record and ultimately determined that Plaintiff retained the RFC to perform light work with additional limitations. TR 23. The ALJ properly evaluated the evidence in reaching this RFC determination, and the Regulations do not require more.

## IV. RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this

Recommendation. *See Thomas v. Arn,* 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986);

28 U.S.C. § 636(b)(1); Fᴇᴅ. R. Cɪᴠ. P. 72.

JEFFREY S. FRENSLEY
United States Magistrate Judge